```
                                              PAGES 1 - 17

                  UNITED STATES DISTRICT COURT

                 NORTHERN DISTRICT OF CALIFORNIA

            BEFORE THE HONORABLE ELIZABETH D. LAPORTE

JAY SALAZAR,                       )
                                   )
            PLAINTIFF,             )
                                   )
  VS.                              ) NO. 16-CV-5235 EDL
                                   )
REGENTS OF THE UNIVERSITY OF       )
CALIFORNIA, A CALIFORNIA PUBLIC    )
ENTITY; UCSF SCHOOL OF MEDICINE,   )
AND MAXINE PAPADAKIS, HUIJU        )
CARRIE CHEN, JEWEL SHIM, DAVID     )
IRBY, AND SUSAN MASTERS; AND DOE   )
DEFENDANTS 1-10, INCLUSIVE         )
                                   ) SAN FRANCISCO, CALIFORNIA
            DEFENDANTS.            ) TUESDAY
                                   ) NOVEMBER 15, 2016
_____)
```

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING 9:27 A.M. - 9:47 A.M.**

**APPEARANCES**:

**FOR PLAINTIFF**           JAY SALAZAR, IN PRO PER
                            40 EAST OAK STREET APT 1605
                            CHICAGO, ILLINOIS 60611


**FOR DEFENDANTS**          GORDON AND REES LLP
                            275 BATTERY STREET, SUITE 2000
                            SAN FRANCISCO, CALIFORNIA 94111
                       **BY: JENNIFER MARIE LYNCH, ESQUIRE**


*TRANSCRIBED BY: JOAN MARIE COLUMBINI, CSR #5435, RPR*
                *RETIRED OFFICIAL COURT REPORTER, USDC*

```
 1   TUESDAY, NOVEMBER 15, 2017                           9:27 A.M.
 2   (TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSELS' FAILURE TO
 3   IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER
 4   ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)
 5                              ---O0O---
 6                             PROCEEDINGS
 7          THE CLERK:  NOW CALLING CASE CV 16-5235, SALAZAR
 8   VERSUS REGENTS OF THE UNIVERSITY OF CALIFORNIA, ET AL.
 9          THE PARTIES SHOULD APPROACH THE PODIUMS TO STATE
10   THEIR APPEARANCES.
11          THE COURT:  PLEASE GO AHEAD AND STATE YOUR NAME.  YOU
12   ARE THE PLAINTIFF, I BELIEVE?
13          MR. SALAZAR:  YES.
14          THE COURT:  ALL RIGHT.
15          MR. SALAZAR:  HELLO, YOUR HONOR.  MY NAME IS JAY
16   SALAZAR, AND I'M THE PLAINTIFF.
17          THE COURT:  THANK YOU.
18          MS. LYNCH:  GOOD MORNING, YOUR HONOR.  JENNIFER LYNCH
19   ON BEHALF OF DEFENDANTS.
20          THE COURT:  THANK YOU.
21          ALL RIGHT.  SO THERE'S A MOTION TO DISMISS, AND THERE
22   ARE A LOT OF DIFFERENT CLAIMS AND VARIOUS DEFENDANTS.  AND I DO
23   HAVE SOME PARTICULAR QUESTIONS.
24          ONE IS, JUST SO I REMEMBER TO ASK THEM, THE
25   DISCRIMINATION COMPLAINTS THAT YOU FILED, MR. SALAZAR, WITH THE
```

```
 1   DEPARTMENT OF EDUCATION, OFFICE OF CIVIL RIGHTS?
 2           MR. SALAZAR:  YES.
 3           THE COURT:  WHAT WERE THE BASES OF THOSE?  WERE THEY
 4   THE AMERICANS WITH DISABILITY ACT DISCRIMINATION, FAILURE TO
 5   ACCOMMODATE BASED ON DISABILITY, OR DID THEY ALSO INCLUDE RACE,
 6   NATIONAL ORIGIN?
 7           MR. SALAZAR:  THEY ALSO INCLUDED RACE AND NATIONAL
 8   ORIGIN.
 9           THE COURT:  OKAY.  AND I TAKE IT THAT'S -- YOU AGREE
10   WITH THAT ON THE DEFENSE SIDE?
11           MS. LYNCH:  I DON'T KNOW THE ANSWER TO THAT, YOUR
12   HONOR.
13           THE COURT:  OKAY.  ALL RIGHT.
14           ALL RIGHT.  AND THE ISSUE, I THINK IN GENERAL, THERE
15   ARE SOME SERIOUS QUESTIONS ABOUT THE TIMELINESS, OF MOST, IF
16   NOT ALL, OF THESE CLAIMS, WHICH, AS YOU KNOW, IS RAISED IN THE
17   PAPERS.
18           THE LAW ABOUT THE AMENDMENT OF THE RELEVANT ACT DOES
19   DISCUSS AN EXCEPTION, I THINK, FOR -- I THINK IT'S RETALIATION
20   BEING A TWO-YEAR STATUTE OF LIMITATIONS, OR IT'S -- NO, IT'S
21   THE 1983, DEPRIVING OF THE ENJOYMENT OF THE CONTRACTS.  BUT I'M
22   NOT SURE WHAT YOUR THEORY IS OF WHAT THE CONTRACT IS AND HOW
23   THAT FITS WITHIN THAT.
24           MR. SALAZAR:  OKAY.  SO FOR THE MATTER OF THE
25   CONTRACT PART, I WROTE THE COMPLAINT DETAILING NUMEROUS FACTS
```

1  OF BREACH OF CONTRACT, WITH THE UNDERSTANDING THAT THE WRITTEN
2  OFFER OF ACCEPTANCE PROVIDED BY UCSF, WHICH WE HAVE TO SIGN
3  COMING IN, AND EXECUTED BY ME, CONSTITUTES THE BINDING
4  AGREEMENT.  AND THAT WAS DISCUSSED IN MULTIPLE OPPORTUNITIES
5  WITH THEM BEFORE THAT WITH THEM.
6        THE LOGIC HERE IS THE DEFENDANTS BREACHED THE TERMS
7  OF THAT AGREEMENT WHEN THE DISMISSAL HAPPENED AND REFUSING TO
8  PROVIDE WITH THE EDUCATIONAL SERVICES.
9        **THE COURT:** AND BASED ON -- IT WOULD HAVE TO BE BASED
10 ON -- DISCRIMINATION BASED ON RACE OR NATIONAL ORIGIN, I
11 BELIEVE, TO COME WITHIN 1981.
12        SO WHAT ARE -- WHAT IS THE EVIDENCE THAT THESE
13 SPECIFIC DEFENDANTS DISCRIMINATED AGAINST YOU?  IN OTHER WORDS,
14 THE COMPLAINT IS VERY, VERY GENERAL.
15        **MR. SALAZAR:** OKAY.  SO --
16        **THE COURT:** BECAUSE, YOU KNOW, JUST TO DISCIPLINE OR
17 FOR A SCHOOL TO SAY, YOU'RE NOT MEETING OUR STANDARDS, IS NOT
18 BY ITSELF DISCRIMINATION.  IT HAS TO BE BECAUSE OF.
19        **MR. SALAZAR:** YES.  SO ADDRESSING IN THE RACE PART,
20 BECAUSE THERE'S ALSO THE DISABILITY PART.
21        **THE COURT:** RIGHT.
22        **MR. SALAZAR:** IN THE RACE PART, WOULD YOU LIKE -- IT
23 WAS THE -- SORRY.  I MADE THIS RACE PLEADINGS IN THE COMPLAINT,
24 A FEW PARAGRAPHS.  THERE IS IN PARAGRAPH 10.  BUT IN PARAGRAPH
25 55, I TALK ABOUT HOW -- FIRST OF ALL -- I'M SORRY.  I'M TALKING

1  ABOUT ALL THE DIFFERENT PLEADINGS ON THE RACE.

2  **THE COURT:** ALSO, WHAT I'M TRYING TO ASK YOU IS

3  SOMETHING DIFFERENT.  I'VE READ THE PLEADINGS.

4  **MR. SALAZAR:** OKAY.

5  **THE COURT:** AND I THINK THEY'RE VERY -- THEY'RE

6  PROBABLY TOO GENERAL --

7  **MR. SALAZAR:** OKAY.

8  **THE COURT:** -- TO SURVIVE AS THEY ARE.

9  **MR. SALAZAR:** OKAY.

10 **THE COURT:** AND I GUESS WHAT I'M ASKING YOU IS WHAT

11 COULD YOU ADD IF YOU WERE GIVEN THE CHANCE?  IF I DISMISS THIS,

12 BUT ALLOWED YOU TO REPLEAD IT, WHAT WOULD YOU ADD TO SHOW

13 ACTUAL INTENTIONAL RACE DISCRIMINATION BY THESE DEFENDANTS?

14 **MR. SALAZAR:** OKAY.  YES.  SO IN THE PART OF THE -- I

15 WILL ADD MORE DETAILS.  THE PART WHERE I TALKED ABOUT THAT,

16 JUDGE CHEN ARGUED THAT SHE BELIEVED THAT, RATHER THAN

17 DISABILITY DISCRIMINATION, WHEN I MADE THE COMPLAINT FOR

18 DISABILITY DISCRIMINATION AND WENT THROUGH A HEARING, THIS WAS

19 ACTUALLY ABOUT RACE DISCRIMINATION.

20 AND THERE WERE DISCUSSIONS BETWEEN THE PROFESSORS

21 ABOUT WHAT SHE PUT THERE AS WELL AS THE NOTES FROM THOSE

22 PROFESSORS THAT THIS WAS -- THAT SHE WAS TARGETING ME BECAUSE

23 OF MY RACE.

24 **THE COURT:** WHO SAID SHE WAS TARGETING YOU BECAUSE OF

25 YOUR RACE?

1    **MR. SALAZAR:** IT'S DR. ILSA LARSEN WHICH WAS THE
2    ATTENDING THAT WAS IN CHARGE OF TEACHING ME.
3    **THE COURT:** SO ANOTHER PROFESSOR OR TEACHER OR
4    ATTENDING PHYSICIAN WAS SAYING --
5    **MR. SALAZAR:** THAT SHE BELIEVED BECAUSE OF THINGS I
6    SAID SHE WAS TARGETING ME BECAUSE OF MY RACE. ON TOP OF THAT,
7    WHEN THE INITIAL COMPLAINT, WE HAD AN INTERCHANGE WHERE SHE
8    ACTUALLY DID TARGET ME BECAUSE OF MY RACE, AS WELL AS TALKING
9    ABOUT --
10   **THE COURT:** DR. CHEN?
11   **MR. SALAZAR:** YES.
12   **THE COURT:** DR. CHEN?
13       (SIMULTANEOUS COLLOQUY).
14   **THE COURT:** BUT WHAT DID SHE DO? WHAT DID SHE SAY?
15   **MR. SALAZAR:** WHAT SHE SAID WAS AT A MEETING WHEN SHE
16   CALLED ME WHEN I WAS STILL IN GOOD STANDING, DOING WELL, AND
17   THEN SHE STATED SHE HAD NUMEROUS CALLS FROM THIS -- AND EMAILS
18   FROM THIS -- FROM THE PROFESSORS IN WHICH THEY HAD CONCERNS
19   ABOUT ME, AND BECAUSE OF THAT SHE WAS GOING TO, YOU KNOW, FAIL
20   ME. AND THEN I -- YOU KNOW, I STATED THAT I DIDN'T UNDERSTAND
21   THAT AND WE GET INTO THIS DISCUSSION SORT OF THING, AND THAT'S
22   WHEN THE RACE COMMENTS CAME ABOUT, AND I CAN FURTHER --
23   **THE COURT:** SO WHAT WERE THE RACE COMMENTS?
24   **MR. SALAZAR:** SO THE RACE COMMENTS WERE ALLEGEDLY
25   THAT -- THE WAY THE EXCHANGE CAME ABOUT WAS THAT IT WAS SAYING,

1  WELL, WE'RE DISCUSSING ABOUT WHY ARE YOU DOING THIS AND THEN
2  THE PART CAME -- THE WAY THAT IT WAS SAID, LIKE, I'M NOT GOING
3  TO SAY ABOUT YOUR WHOLE -- THAT BECAUSE OF THE LATINO PART OR
4  THE DISABILITY PART AND THEN THE WAY SHE GAVE -- WE TALKED MORE
5  ABOUT THE DEFENSE PART, WHERE SHE TALKS OF THE DISABILITY PART,
6  BECAUSE SHE STATED THAT FOR THE DISABILITY SHE HAD AN EMAIL
7  ALLEGEDLY THAT I WASN'T GOING TO USE MY DISABILITY COMPLAINTS
8  AND THEN SHE WENT ON INTO THIS.
9       SO AT THE END THE AGREEMENT WAS THAT I WAS GOING TO
10 DO MY BEST AND DO WELL, WHICH I ENDED UP DOING. AND THEN AT
11 THE POINT SHE ORDERED THAT SAME PROFESSOR THAT SHE HAD A
12 DISCUSSION, THE RACE DISABILITY, SHE ORDERED HER TO CHANGE THE
13 EVALUATION AFTER IT WAS GIVEN TO ME TO -- TWO MONTHS TO ADD
14 NEGATIVE COMMENTS ABOUT ME WHICH WAS THE BASIS FOR THE INTERNAL
15 COMPLAINT THAT WAS DONE.
16       ALSO THERE WAS -- I TALKED IN PARAGRAPH 99 ABOUT ONE
17 OF THE PROFESSORS IN THERE TALKED TO US, WHO WAS ASSISTING THE
18 MULTIPLE LATINO STUDENTS THAT WERE BEING TARGETED AT THE SAME
19 TIME, AND FOR -- BY THE DEFENDANTS TO BE EXPELLED SINCE THIS
20 WAS -- SEEMED TO BE LIKE A COMMON PRACTICE THAT THERE WAS A
21 TASK FORCE THAT WAS BEING CONVENED BY THE UNIVERSITY TO
22 INVESTIGATE THAT PAPADAKIS WAS TREATING LATINO STUDENTS AS
23 CRIMINALS TO TRY TO EXPEL THEM.
24       I ALSO HAVE -- I TALKED INTO DETAILS ON PARAGRAPH 100
25 AND 101 ABOUT TWO DIFFERENT STUDENTS THAT WERE ACTUALLY --

```
 1   ESPECIALLY ONE OF THE STUDENTS WAS IN MY GROUP, SMALL GROUPS
 2   THAT WERE TAUGHT TOGETHER, AND I SAW HOW THEY WERE TARGETING
 3   HIM AND COMMENTS WERE BEING SAID ABOUT THAT HE WASN'T GOOD
 4   BECAUSE OF, YOU KNOW, LATINO STUDENTS ARE NOT GOOD.  AND
 5   MULTIPLE PROFESSORS WOULD TALK ABOUT HOW THAT WAS THE CULTURE
 6   IN THERE.
 7           THE COURT:  ALL RIGHT.  LET ME -- I GET THE GENERAL
 8   POINT.  I APPRECIATE THAT.
 9           LET ME ASK, ON THE OTHER CLAIMS, THEY DO HAVE A
10   FOUR-YEAR STATUTE OF LIMITATIONS GENERALLY.  AND THEN THE ONLY
11   WAY THAT YOU COULD BE TIMELY FOR THEM WOULD BE IF -- THERE'S
12   WHAT'S CALLED EQUITABLE TOLLING.
13           MR. SALAZAR:  YES.
14           THE COURT:  AND ONE OF THE BASES OF THAT HAS TO BE --
15   ONE OF THE FACTORS, ANYWAY, IS THAT THE DEFENDANTS HAD NOTICE
16   OF THE CLAIM.  WHAT NOTICE DID YOU GIVE TO THE DEFENDANTS THAT
17   YOU WERE LATE IN DOING IT, BUT YOU WERE GOING TO FILE A
18   DISABILITY AND RACE DISCRIMINATION TYPE OF CLAIM AGAINST THEM?
19           MR. SALAZAR:  OKAY.  SO I FILED WITH THE DEFENDANT,
20   DEAN PAPADAKIS, I FILED MULTIPLE COMPLAINTS THROUGHOUT MY THIRD
21   YEAR OF MEDICAL SCHOOL FROM THE RETALIATORY EVENTS THAT WERE
22   HAPPENING BY THESE PROFESSORS.
23           ON TOP OF THAT, WE ENGAGED IN A FULL HEARING IN WHICH
24   THEY BROUGHT THE LAWYERS AND THEY BLOCKED ME FROM HAVING
25   LAWYERS, AND THEY LASTED FOR SIX MONTHS OF MULTIPLE MEETINGS,
```

```
 1   WEEKLY THINGS OF BEING ASKED FOR ME TO DO ON TOP OF MY
 2   EDUCATION IN THEIR -- TO BE ABLE TO DO THIS.  SO THEN  --
 3            THE COURT:  SO YOU'RE SAYING --
 4            (SIMULTANEOUS COLLOQUY).
 5            THE COURT:  MY QUESTION IS WHAT NOTICE DID THEY HAVE
 6   THAT A LAWSUIT WAS FORTHCOMING --
 7            (SIMULTANEOUS COLLOQUY.)
 8            MR. SALAZAR:  SO THEN, YES.  UP TO SEPTEMBER -- PRIOR
 9   TO SEPTEMBER, 12 DEFENDANTS -- AND I ACTUALLY HAVE THE LETTER
10   HERE.  AT THAT TIME I JUST HAD AN ATTORNEY DRAFT THIS NOTICE OF
11   THAT LAWSUIT WAS COMING, AND IT WAS GIVEN TO THEM ON JULY 25,
12   2012, IN WHICH DEFENDANTS WERE INFORMED OF THE VIOLATIONS THAT
13   TO DISMISS ME LEAD TO LEGAL ACTION AND, AND AN ADR SESSION WAS
14   OFFERED.  SO THAT WAS ONE OF THE -- THAT WAS GIVEN.
15            THE COURT:  2012?
16            MR. SALAZAR:  YEAH, IN 2012.
17            THE COURT:  OKAY.
18            MR. SALAZAR:  AND THEN IN ADDITION --
19            THE COURT:  SO THAT IS -- ALL RIGHT.
20            MR. SALAZAR:  AND IN ADDITION THROUGH AN INTERMEDIARY
21   PROFESSOR THAT WAS WORKING WITH THE VICE DEAN, I GAVE THEM ALL
22   THE COPIES OF MY COMPLAINTS THAT I FILED WITH OCR IN 2012, AS
23   WELL.
24            THE COURT:  OKAY.  AND WHAT -- MEAN, YOU'RE SUPPOSED
25   TO BE -- ALSO IN EQUITABLE TOLLING THERE'S SEVERAL LEGAL
```

1  REMEDIES, AND YOU'RE PURSUING ONE IN GOOD FAITH.  SO I'M NOT
2  SURE IT'S ENOUGH TO BE BUSY WITH SCHOOL, ET CETERA.  BUT YOU'RE
3  SAYING YOU'RE PURSUING AN INTERNAL REMEDY OR THE OCR, OFFICE OF
4  CIVIL RIGHTS, REMEDY?
5           **MR. SALAZAR:**  YES.  ON TOP OF DOING THE OCR, I
6  PURSUED AN INTERNAL LEGAL REMEDY FOR THE DISABILITY
7  DISCRIMINATION BY DR. CHEN.  THAT WAS A VERY BIG HEARING THAT
8  ACTUALLY THEY INVOLVED -- THEIR BASIS FOR THEM (INDISCCERNIBLE)
9  COME FROM IT.
10          SO AT THE END, WHAT THEIR BASIS FOR TRYING TO EXPEL
11 ME WASN'T BECAUSE I FAILED EXAMS, BECAUSE I ACTUALLY WAS
12 PASSING ALL THE COURSES, WAS BECAUSE IN -- ONE OF THEM IS
13 BECAUSE THEY STATED THAT FILING A DISCRIMINATION COMPLAINT MADE
14 THEM UNCOMFORTABLE AND THAT WAS WITH ONE OF THE PHYSICIANSHIPS,
15 THE REPRIMAND SAID, AND THEN ANOTHER ONE I MADE THE ATTENDINGS
16 UNCOMFORTABLE OF WORKING WITH ME BECAUSE I DISCLOSED HAVING
17 DISABILITIES.
18          SO THOSE WERE THE TWO OFFICIAL COMPLAINTS THAT THEY
19 HAD TO BE ABLE TO TRY TO REFER ME FOR DISMISSAL, AND THAT'S
20 SOMETHING THAT THE DEAN HERSELF WROTE TO ME, AND I HAVE THE
21 LETTERS IF YOU WANT TO SEE THEM.
22          **THE COURT:**  LET ME -- AND I SHOULD SAY SOME OF THESE
23 CLAIMS IT'S A THREE-YEAR STATUTE OF LIMITATIONS, JUST TO
24 CORRECT WHAT I SAID BEFORE.
25          ALL RIGHT.  DO YOU WANT TO ADDRESS THOSE SAME POINTS?

1  WHAT I'M REALLY GETTING AT, I GUESS, IS THAT I THINK A LOT OF
2  POINTS DEFENDANT HAS MADE ABOUT THIS COMPLAINT AS IT STANDS NOT
3  BEING SUFFICIENT.  THE QUESTION IS REALLY, SHOULD I GIVE YOU
4  LEAVE TO AMEND SO YOU COULD TRY AND ADD THOSE KIND OF DETAILS?
5  IT WOULD BE AGAINST EACH INDIVIDUAL DEFENDANT, YOU KNOW, ACTUAL
6  EVIDENCE THAT IS MORE SPECIFIC ABOUT ALLEGED RACE
7  DISCRIMINATION, FOR EXAMPLE, NOT EVIDENCE, BUT ALLEGATIONS --
8         **MR. SALAZAR:**  YES.
9         **THE COURT:**  -- THAT'S MADE IN GOOD FAITH --
10        **MR. SALAZAR:**  YEAH.
11        **THE COURT:**  -- BECAUSE YOU BELIEVE IT ACTUALLY
12 HAPPENED, AND THE NOTICE AND THINGS LIKE THAT, AND THE ISSUES
13 THAT HAVE BEEN FLUSHED OUT HERE.  AND I'M THINKING I PROBABLY
14 SHOULD GIVE LEAVE TO AMEND ON SOME OF THESE, BECAUSE IT IS
15 NORMALLY GRANTED UNLESS IT WOULD BE FUTILE.  IT MAY BE THAT YOU
16 WOULD NOT BE ABLE TO REMEDY, BUT IT MAY BE THAT YOU WOULD.  BUT
17 THOSE ARE THE QUESTIONS I'M FOCUSING ON.
18        **MS. LYNCH:**  CERTAINLY, YOUR HONOR.
19        JUST TO BRIEFLY ADDRESS THE EQUITABLE TOLLING ISSUE,
20 THE NEW FACTS ASSERTED BY MR. SALAZAR HERE IN THE COURT TODAY
21 WOULDN'T BE SUFFICIENT TO TOLL THE STATUTE OF LIMITATIONS IN
22 ANY EVENT.  THE ALLEGED INTERNAL DISABILITY DISCRIMINATION
23 COMPLAINTS THAT HE FILED, ALL OF THOSE ALLEGEDLY OCCURRED
24 BEFORE HIS DISMISSAL, YEARS BEFORE HIS DISMISSAL IN
25 SEPTEMBER 2012.  SO, CERTAINLY, AT THAT POINT THE ALLEGEDLY

```
1   UNLAWFUL ACTIVITY HAD REACHED A CONCLUSION.  THE STATUTE OF
2   LIMITATIONS STARTED TO RUN.
3           WITH RESPECT TO THE COMPLAINT THAT WAS ALLEGEDLY
4   FILED WITH THE OFFICE OF CIVIL RIGHTS, I DON'T KNOW.  I HAVEN'T
5   SEEN THAT COMPLAINT.  I DON'T KNOW WHETHER THAT COMPLAINT
6   ADEQUATELY DISCLOSED THE BASIS FOR DISABILITY DISCRIMINATION OR
7   RACE DISCRIMINATION.  IT'S CERTAINLY NOT PLED ADEQUATELY IN THE
8   COMPLAINT, SO IT'S DIFFICULT TO --
9           **THE COURT:**  AND WHEN WAS THAT?  WHEN WAS THE OCR?
10          **MR. SALAZAR:**  WELL, THERE WERE SEVERAL.  THE LAST
11  TWO, THERE WAS ONE IN NOVEMBER 2011, AND THE OTHER ONE WAS IN
12  NOVEMBER 2012 FROM WHICH I DIDN'T RECEIVE.
13          THE ONE OTHER COMMENT THAT I WANTED TO SAY ABOUT THE
14  EQUITABLE TOLLING WAS THAT WHEN -- JULY 3RD, 2013, WHEN I FILED
15  FOR CHAPTER VII BANKRUPTCY, THE U.S. TRUSTEE STATED HE WOULD
16  ASSIGN AN ATTORNEY TO VIEW THE CASE FOR, YOU KNOW, BEFORE THE
17  COURTS (INDISCERNIBLE) ON THIS, WHICH THEY DID ASSIGN, AND THEN
18  IT WASN'T UNTIL AFTER A YEAR LATER, UNTIL AUGUST 22ND, 2014,
19  THAT THE ATTORNEY HERE IN THE BAY AREA DECIDED NOT TO PURSUE
20  THE CASE JUST BECAUSE IT WOULD BE DIFFICULT, BUT STATED THAT
21  THE WAY THE UNIVERSITY PURSUED THE DISCONTINUATION FOR
22  NON-ENROLLMENT WASN'T A PROPER DISMISSAL.
23          **THE COURT:**  ALL RIGHT.  WELL, THOSE -- I MEAN, THAT
24  WOULD BE POTENTIALLY SOMETHING TO PUT INTO AN AMENDED
25  COMPLAINT.  I DON'T KNOW WHETHER IT WOULD MAKE THE DIFFERENCE
```

1  OR NOT.  I MEAN, A LOT OF THESE THINGS HAVE NOT BEEN FLUSHED
2  OUT AS OF YET.
3          BUT YOU MAY CONTINUE IF YOU HAVE ANY MORE THINGS --
4          **MS. LYNCH:**  JUST ONE FINAL POINT, YOUR HONOR.
5          THERE'S NO ALLEGATION -- EVEN ASSUMING THAT THESE
6  COMPLAINTS WITH THE OFFICE OF CIVIL RIGHTS WERE FILED, THERE'S
7  NO ALLEGATION THAT, IN FACT, DEFENDANTS RECEIVED COPIES OF
8  THOSE COMPLAINTS OR WERE NOTIFIED OF THE ALLEGATIONS CONTAINED
9  IN THOSE COMPLAINTS, AND THAT'S WHAT'S NECESSARY TO APPLY
10 EQUITABLE TOLLING.
11         **THE COURT:**  RIGHT.  WELL, THERE DOES HAVE TO BE
12 NOTICE TO THE DEFENDANTS, AND THAT'S ONE OF THE THINGS I HAVE
13 BEEN TRYING TO GET AT.  DID YOU PROVIDE A COPY OF THE OCR
14 COMPLAINT TO THE DEFENDANTS OR IS THAT SOMETHING --
15         **MR. SALAZAR:**  THAT'S NOT SOMETHING THAT IS PRACTICED.
16 THE WAY IT'S EXPLAINED IN THERE BY THE OCR, I DON'T CONTACT
17 THEM ABOUT THE COMPLAINT.  THEY DO IT IF THEY'RE --
18         **THE COURT:**  RIGHT.  DOES OCR --
19         (SIMULTANEOUS COLLOQUY.)
20         **MR. SALAZAR:**  -- PURSUING IT?  SO I DON'T KNOW IF,
21 YOU KNOW, THE UNIVERSITY -- MAYBE, MAYBE NOT -- WOULD FORMALLY,
22 AT LEAST UNLESS SOMETHING WENT AWRY, BE NOTIFIED OR NOT
23 NOTIFIED.  IT MAY BE THAT THEY'RE NOT NOTIFIED IF OCR DOESN'T
24 FILE A FORMAL COMPLAINT.  I DON'T KNOW.  BUT THAT'S SOMETHING
25 THAT PROBABLY NEEDS SOME FLESHING OUT.

1  **THE COURT:** SO I THINK, I MEAN, WHAT I'M INCLINED TO
2  DO IS DISMISS IT, AND AS TO SOME YOU -- I'M NOT QUITE SURE
3  RIGHT AT THE MOMENT, BECAUSE THERE ARE NUMEROUS CLAIMS -- ALLOW
4  REPLEADING WITHOUT PREJUDICE, BUT TO SEE IF YOU COULD SHOW,
5  ESPECIALLY THE MOST IMPORTANT ISSUES -- AND I PUT THIS IN A
6  WRITTEN DECISION, BUT IT WOULD BE WHETHER OR -- WHETHER OR NOT
7  YOU COULD ACTUALLY SHOW EQUITABLE TOLLING, WHICH IS NOT THAT
8  EASY.  IT'S NOT ENOUGH -- IT MAY SEEM UNFAIR, BUT IT'S NOT
9  ENOUGH TO BE BUSY.
10      BASICALLY, THERE HAS TO BE NOTICE TO THE DEFENDANT
11 AND NO PREJUDICE, AND I'M NOT SURE THAT ALL HAPPENED, BUT I
12 WOULD GIVE YOU A CHANCE TO SEE.
13      AND THEN AS TO THE DISCRIMINATION, WHICH HAS A
14 SHORTER STATUTE OF LIMITATIONS, IF YOU CAN ADEQUATELY PLEAD
15 THERE WAS, I THINK DEFENDANTS ARE RIGHT, AS CURRENTLY PLED,
16 THIS IS NOT ENOUGH TO SHOW, YOU KNOW, INTENTIONAL RACE AND
17 INFERENCE OF INTENTIONAL DISCRIMINATION BY EACH OF THESE
18 INDIVIDUAL DEFENDANTS.
19      YOU KNOW, WE'VE ONLY DISCUSSED ONE IN THE INTEREST OF
20 TIME, DR. CHEN.  MAY OR MAY NOT BE WHETHER YOU CAN SHOW THAT AS
21 TO THE -- I THINK IT'S A HER.  I'M NOT QUITE SURE.
22      **MR. SALAZAR:** IT'S A HER.  AND THEN THE --
23      **THE COURT:** THE OTHERS, I DON'T NEED TO HEAR IT NOW,
24 BECAUSE IF I GIVE YOU LEAVE TO AMEND, YOU PUT IT IN YOUR
25 COMPLAINT, BUT YOU WOULD NEED TO FLESH THAT OUT.

```
 1              LET ME ASK HAVE YOU, ARE YOU -- I CAN'T REMEMBER IF
 2   YOU'VE USED THE HELP OF THE PRO SE OFFICE HERE.  THERE'S --
 3         MR. SALAZAR:  YES.  I CALLED THEM --
 4         THE COURT:  GOOD.
 5         MR. SALAZAR:  -- ON A COUPLE OPPORTUNITIES --
 6         THE COURT:  GOOD.
 7         MR. SALAZAR:  -- AND WE TALKED FOR ABOUT 30 MINUTES.
 8   JUST ABOUT THE MECHANICS OF IT.  WE DIDN'T TALK ABOUT THE CASE
 9   ITSELF.
10         (SIMULTANEOUS COLLOQUY.)
11         THE COURT:  I MEAN, THEY CAN'T ACTUALLY REPRESENT
12   YOU, YOU KNOW, AND BE YOUR LAWYER.  SO THAT ISN'T THEIR JOB.  I
13   JUST WANT YOU TO KNOW ABOUT IT BECAUSE IT CAN BE VERY HELPFUL.
14   SO YOU MAY WANT TO KEEP THAT UP.
15              SO I THINK WE NEED TO SEE WHETHER THE CASE GETS
16   REPLEADED, WHAT OF IT GOES FORWARD, IF ANYTHING.
17              IF IT DOES GO FORWARD -- LET ME ASK.  I'M JUST
18   WONDERING SOMETIMES IN THESE CASES, RATHER THAN BURN UP A LOT
19   OF TIME ON THE PLEADINGS, IT CAN MAKE SENSE TO HAVE SOME KIND
20   OF SETTLEMENT CONFERENCE OR DISPUTE RESOLUTION OR SOMETHING.  I
21   DON'T KNOW IF THAT'S PREMATURE IN BOTH SIDES' VIEW AND YOU WANT
22   TO GET THE PLEADINGS SETTLED OR WHETHER YOU THINK IT WOULD MAKE
23   ANY SENSE.
24         MS. LYNCH:  WELL, FROM DEFENDANTS' PERSPECTIVE, YOUR
25   HONOR, I THINK IT WOULD MAKE SENSE TO HAVE SOME CERTAINTY ON
```

```
 1   THE PLEADINGS BEFORE HAVING THAT DISCUSSION.  CERTAINLY, ONCE
 2   WE KNOW WHICH DEFENDANTS, IF ANY, ARE GOING TO BE DEFENDANTS IN
 3   THE LAWSUIT --
 4           THE COURT:  IT'S A GOOD POINT.  YOU DON'T REALLY
 5   KNOW.
 6           MS. LYNCH:  RIGHT.  BUT, CERTAINLY, ONCE THERE'S
 7   CERTAINTY, IF THERE'S -- IF, IN FACT, SOME CLAIMS DO SURVIVE,
 8   I'M CERTAINLY OPEN TO HAVING THAT DISCUSSION WITH MY CLIENTS.
 9           THE COURT:  OKAY.  ALL RIGHT.  AND THEN SOMETIMES WE
10   CAN -- SOMETIMES, BUT BY NO MEANS ALWAYS, YOU CAN GET A LIMITED
11   REPRESENTATION JUST FOR THE PURPOSE OF THE SETTLEMENT
12   CONFERENCE, FOR EXAMPLE.  YOU WOULDN'T GET AN ATTORNEY FOR ALL
13   PURPOSES.  I DON'T KNOW IF YOU'VE CONTINUED TO PURSUE TRYING TO
14   GET AN ATTORNEY OR NOT.
15           MR. SALAZAR:  I'M STILL TRYING TO WORK IT OUT WITH MY
16   LIMITED MEANS.
17           THE COURT:  IT'S ALWAYS MORE DIFFICULT, IN SOME WAYS
18   FOR EVERYBODY, JUST BECAUSE, OF COURSE, THIS IS A SPECIALIZED
19   FIELD JUST AS BEING A DOCTOR IS --
20           MR. SALAZAR:  YES.
21           THE COURT:  -- A SPECIALIZED FIELD, AND I'M SURE YOU
22   KNOW THAT.
23           ALL RIGHT.  WE WILL ISSUE A WRITTEN DECISION.  AND AS
24   I SAY, IT'S LIKELY THAT I WOULD GIVE LEAVE AT LEAST AS TO SOME
25   OF THESE CLAIMS TO TRY AGAIN, ESSENTIALLY.  BUT IF YOU DIDN'T
```

1  SUCCEED AT THAT POINT, THAT WOULD PROBABLY BE IT, GIVEN THAT
2  I'VE, YOU KNOW, TRIED TO EXPLAIN WHAT WOULD BE NECESSARY,
3  BUT -- ALL RIGHT.  ANYTHING ELSE?
4        **MS. LYNCH:**  NO, YOUR HONOR.
5        **THE COURT:**  ALL RIGHT.  AND THEN IF I -- IF I DO GIVE
6  YOU LEAVE, IS TWO WEEKS SUFFICIENT TO FILE A NEW COMPLAINT?
7        **MR. SALAZAR:**  PROBABLY NOT, CONSIDERING THAT IT'S --
8  I MEAN, I'M NOT AN ATTORNEY (INDISCERNIBLE) VERY DIFFICULT.
9        **THE COURT:**  I THINK WE EXPLAINED IT WOULD BE MUCH
10 MORE FOCUSED THIS TIME.  WELL, I MAY GIVE YOU AS MUCH AS THREE,
11 BUT I DON'T WANT TO STALL THE CASE TOO MUCH.  IT'S GOT TO GET
12 MOVING.
13       **MR. SALAZAR:**  ALL RIGHT.
14       **THE COURT:**  THANK YOU.
15       **MS. LYNCH:**  THANK YOU, YOUR HONOR.
16       (PROCEEDINGS ADJOURNED AT 9:47 A.M.)

## CERTIFICATE OF TRANSCRIBER

I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE ABOVE MATTER.

I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

*/s/ mcolumbini*
JOAN MARIE COLUMBINI
SEPTEMBER 25, 2017